EUGENE H. LADD and WILLIAM E. SMALLMAN, Respondents, *v.* ÆTNA INSURANCE COMPANY, Appellant.

FIRE INSURANCE — MANUFACTURING ESTABLISHMENT — CESSATION OF OPERATION. A mere temporary cessation of the operation of the machinery in a manufacturing establishment (as, *e. g.*, a water-power saw mill) by reason of sickness, break down, low water or other unavoidable cause, without any intention on the part of the insured to cease operating or to allow the premises to become vacant or unoccupied, is not of itself to be deemed a violation of the provisions of a fire insurance policy avoiding it in case the establishment ceased to be operated for more than ten consecutive days, or became vacant or unoccupied, and so remained for ten days.

Reported below, 70 Hun, 490.

(Argued October 31, 1895; decided November 26, 1895.)

APPEAL from order of the General Term of the Supreme Court in the third judicial department, made July 8, 1893, which reversed a judgment in favor of defendant entered upon a verdict directed by the court and granted a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*A. H. Sawyer* for appellant. Under the condition of the policy rendering the same void if the subject of insurance be a manufacturing establishment, and it cease to be operated for more than ten consecutive days, there was no question whatever to submit to the jury. (*Lovell Co.* v. *Houghton*, 116 N.

Y. 529; *Hall* v. *Stevens*, 116 N. Y. 210; *Dwight* v. *G. Ins. Co.*, 103 N. Y. 341, 358; *Wells* v. *World's Assn.*, 120 N. Y. 631; *Linkhauf* v. *Lombard*, 137 N. Y. 417, 426; *Cutter* v. *Morris*, 41 Hun, 575; *Deyo* v. *N. Y. C. R. R. Co.*, 34 N. Y. 1, 13; *Lomer* v. *Meeker*, 25 N. Y. 361; *Weed* v. *Ins. Co.*, 70 N. Y. 563; *Wilds* v. *H. R. R. R. Co.*, 24 N. Y. 430; *Appleby* v. *A. Ins. Co.*, 54 N. Y. 253; *T. G. C. Co.* v. *Smith*, 110 N. Y. 87; *Wyllie* v. *Palmer*, 137 N. Y. 253; *Groat* v. *Gile*, 51 N. Y. 431, 441; *St. Luke's Home* v. *Association*, 52 N. Y. 191; *Glacius* v. *Black*, 67 N. Y. 563, 567; *Blossom* v. *L. Ins. Co.*, 64 N. Y. 162.) The policy became void prior to the fire by reason of the mill having ceased to be operated for more than ten consecutive days. (*Stone* v. *H. Ins. Co.*, 153 Mass. 475; *Conlin* v. *W. A. Co.*, 57 Md. 515; *Day* v. *M. O. M. F. Ins. Co.*, 70 Iowa, 710; Laws of 1886, chap. 486; Laws of 1892, chap. 690, § 121; *Quinlan* v. *P. W. Ins. Co.*, 133 N. Y. 366.) The sawing of the two logs, three days before the fire, did not constitute an operation of the mill; nor did it relieve the plaintiffs from the forfeiture which had previously occurred. (*Mead* v. *N. W. Ins. Co.*, 7 N. Y. 530, 535; *I. F. Ins. Co.* v. *Coos County*, 151 U. S. 452; *Kyte* v. *C. U. A. Co.*, 149 Mass. 116; *Moore* v. *P. Ins. Co.*, 62 N. H. 240; *Ferree* v. *O. F. & L. Ins. Co.*, 67 Penn. St. 373.) The policy of insurance in this case is not severable. (*Stone* v. *H. Ins. Co.*, 153 Mass. 475.) The plaintiffs are not mortgagees and have no interest in the insurance herein except through King & Trushaw to whom the policy had been transferred. (*Grosvenor* v. *A. Ins. Co.*, 17 N. Y. 391; *Lasher* v. *St. J. F. & M. Ins. Co.*, 86 N. Y. 423; *Perry* v. *L. F. Ins. Co.*, 61 N. Y. 214; *Weed* v. *L. & L. Ins. Co.*, 116 N. Y. 106; *Moore* v. *H. F. Ins. Co.*, 141 N. Y. 219.) There are no equities in this case in favor of the plaintiffs. (*Mack* v. *R. Ins. Co.*, 106 N. Y. 565.)

*John P. Kellas* for respondents. Upon this appeal the evidence and inferences to be drawn therefrom must be construed most favorably to plaintiffs; and any fact the jury

would have been warranted in finding from the evidence must be regarded upon this appeal as found in plaintiffs' favor. (*Rehberg* v. *Mayor, etc.,* 91 N. Y. 141; *Galvin* v. *Mayor, etc.,* 20 N. Y. S. R. 569, 573; *Darling* v. *How,* 38 N. Y. S. R. 708; *Valentine* v. *Richardt,* 39 N. Y. S. R. 38; *Weil* v. *D. D., etc., R. R. Co.,* 119 N. Y. 147.) If any error existed in the indorsement made upon the policy as to the actual relation of King & Trushaw to the property, defendant cannot now take advantage of that error. (*Mowery* v. *A. Ins. Co.,* 64 Hun, 137; *Van Schoick* v. *N. Ins. Co.,* 68 N. Y. 434; *Richmond* v. *N. Ins. Co.,* 79 N. Y. 230; *Short* v. *H. Ins. Co.,* 90 N. Y. 16; *Sanders* v. *Cooper,* 115 N. Y. 279; *Vanderhoef* v. *A. Ins. Co.,* 46 Hun, 328; *Berry* v. *A. C. Ins. Co.,* 30 N. Y. S. R. 53; 132 N. Y. 49; *McNally* v. *P. Ins. Co.,* 137 N. Y. 389; *Forward* v. *C. Ins. Co.,* 66 Hun, 546; *N. F. Ins. Co.* v. *C. S. & P. Co.,* 17 Wkly. Dig. 262; *Moore* v. *Burrows,* 34 Barb. 173; *Cogswell* v. *Cogswell,* 2 Edw. Ch. 238; *Hathaway* v. *Payne,* 34 N. Y. 103; *Adams* v. *Green,* 34 Barb. 179; *Pelton* v. *W. Ins. Co.,* 13 Hun, 23; 77 N. Y. 605; *Riggs* v. *C. Ins. Co.,* 125 N. Y. 7; *Dakin* v. *L., L. & G. Ins. Co.,* 13 Hun, 122; 77 N. Y. 600; *De Wolf* v. *C. C. Ins. Co.,* 16 Hun, 116; *Burke* v. *N. Ins. Co.,* 34 N. Y. S. R. 701; *Pitney* v. *G. F. Ins. Co.,* 65 N. Y. 6; *Kratzenstein* v. *W. Ass. Co.,* 116 N. Y. 59; *Darrow* v. *F. F. Society,* 116 N. Y. 537; *Weed* v. *H. B. Ins. Co.,* 39 N. Y. S. R. 638.) The mill was neither vacant nor unoccupied at the time of the fire. (*May on Ins.* 668; *Whitney* v. *B. R. Ins. Co.,* 9 Hun, 37; 72 N. Y. 117; *Halpin* v. *P. Ins. Co.,* 118 N. Y. 175; *Vanderhoef* v. *A. Ins. Co.,* 46 Hun, 328; *P. Ins. Co.* v. *Tucker,* 42 Ill. 64; *W. A. Co.* v. *Mason,* 5 Bradw. 141; *Williams* v. *N. G. Ins. Co.,* 24 Fed. Rep. 625; *L. M. Ins. Co.* v. *Erb,* 112 Penn. St. 149; *Eddy* v. *H. Ins. Co.,* 70 Iowa, 472; *B. M. Co.* v. *R. Ins. Co.,* 33 Fed. Rep. 232; *A. L. Works* v. *W. C. Ins. Co.,* 2 Fed. Rep. 479; *Woodruff* v. *I. Ins. Co.,* 83 N. Y. 133; *Johnston* v. *B. Ins. Co.,* 39 Hun, 410; *Waldrant* v. *P. Ins. Co.,* 64 Hun, 135; *O'Brien* v. *C. Ins. Co.,* 5 J. & S. 517; *Gamwell* v. *M. Ins. Co.,*

12 Cush. 167; *N. F. Ins. Co.* v. *Boomers*, 52 Ill. 442.) The
mill, if held to be a manufacturing establishment, did not
cease to be operated for a period of ten days within the mean-
ing of the policy. (*Whitney* v. *B. R. Ins. Co.*, 9 Hun, 42;
*Poss* v. *W. A. Co.*, 40 Am. Rep. 68; *L. M. Ins. Co.* v.
*Leathers*, 6 Cent. Rep. 901; *A. F. Ins. Co.* v. *B. C. M. Co.*,
125 Ill. 131; *C. P. & S. M. Co.* v. *M., etc., Ins. Co.*, 72 Mich.
654; *Kratzenstein* v. *W. Ass. Co.*, 116 N. Y. 59; *Halpin* v.
*Ins. Co. of N. A.*, 120 N. Y. 73; *Wadsworth* v. *J. & T.
Co.*, 132 N. Y. 540; *Bailey* v. *H. Ins. Co.*, 80 N. Y. 23;
*McNally* v. *P. Ins. Co.*, 137 N. Y. 389, 412; *President, etc.*,
v. *Phillips*, 109 N. Y. 383; *Keegan* v. *K. T. & M. M. A.
Assn.*, 122 N. Y. 254; *Parke* v. *F. A. T. Co.*, 120 N. Y. 51;
*F. N. Bank* v. *Dana*, 79 N. Y. 116; *Pitney* v. *G. F. Ins.
Co.*, 65 N. Y. 6; *Butler* v. *Murray*, 30 N. Y. 88; *Nichols* v.
*S. A. R. Co.*, 38 N. Y. 131; *Heyne* v. *Blair*, 62 N. Y. 19;
*Stupelski* v. *T. A. F. Ins. Co.*, 43 Mich. 373; *Herrman* v.
*M. Ins. Co.*, 81 N. Y. 184; *F. F. Ins. Co.* v. *Kepler*, 95
Penn. St. 492; *Lascelle* v. *H. F. Ins. Co.*, 43 N. J. L. 468;
*Moore* v. *P. Ins. Co.*, 7 East. Rep. 202; *Vail* v. *Reynolds*,
118 N. Y. 300.) Whatever view might be taken as to the
buildings, it was error to direct a verdict against plaintiffs as
to the machinery. (*Herrman* v. *M. Ins. Co.*, 81 N. Y. 184;
*Halpin* v. *Ins. Co. of N. A.*, 120 N. Y. 70; *Schuster* v. *D. Ins.
Co.*, 102 N. Y. 260; *Holmes* v. *Drew*, 16 Hun, 491; *Sunder-
lin* v. *E. Ins. Co.*, 18 Hun, 522; *Doey* v. *A. Ins. Co.*, 21
Hun, 522; *Woodward* v. *R. Ins. Co.*, 32 Hun, 365.)
Whether the mill ran or not, the plaintiffs, so far as they were
interested before the fire, were not affected. (*Forward* v. *C.
Ins. Co.*, 49 N. Y. S. R. 867.) The order reversing the judg-
ment and directing a new trial was right. (*Reed* v. *McCon-
nell*, 133 N. Y. 425.)

BARTLETT, J. This action was brought to recover on a
policy of insurance covering a frame water-power saw-mill
building and machinery contained therein. The policy was
issued to plaintiffs as owners of the property, and ran for one

year from February 26th, 1891; the property was totally destroyed by fire January 9th, 1892.

On June 29th, 1891, the plaintiffs entered into a written contract to sell the property to King and Trushaw, and the latter at once entered into possession and occupancy and operated the property, as plaintiffs claim, until its destruction by fire.

On the 30th of June, 1891, an indorsement was made on the policy by the agent of the defendant to the effect that title was in King and Trushaw, and loss, if any, payable to the plaintiffs as their interest might appear.

It was one of the questions litigated on the trial whether the plaintiffs gave defendant such notice of the change of interest as was required by the terms of the policy, in view of the fact that the legal title was not vested in King and Trushaw at the time of the fire, although the indorsement on the policy stated that it was.

Prior to the commencement of this action King and Trushaw assigned to plaintiffs all their claims under the policy.

As it is a well-settled rule that in determining the correctness of a non-suit the plaintiff is entitled to the most favorable inferences deducible from the evidence, and all contested facts are to be deemed established in his favor, it will be assumed, for the purposes of this appeal, that the plaintiffs fully complied with the provisions of the policy as to change of interest, and were authorized to bring this action to recover any amount due from defendant by reason of the loss. (*Rehberg* v. *The Mayor*, etc., 91 N. Y. 141; *Weil* v. *D. D., E. B. & B. R. R. Co.*, 119 N. Y. 152.)

The Ætna Insurance Company defends this action mainly on the ground that the plaintiffs were conducting a manufacturing establishment, and that for more than ten consecutive days they had ceased to operate it as such and had allowed it to become vacant or unoccupied.

The material portions of the policy now to be construed read as follows, viz. :

"This entire policy, unless otherwise provided by agreement endorsed hereon or added hereto, shall be void　＊　＊　＊

if the subject of insurance be a manufacturing establishment and * * * it cease to be operated for more than ten consecutive days * * * ; or if a building herein described, whether intended for occupancy by owner or tenant, be or become vacant or unoccupied and so remain for ten days."

The facts, as the plaintiffs are entitled to claim them by the record as now presented, are as follows, viz. : After King and Trushaw entered into contract to purchase the insured property they took possession at once and made extensive repairs; King lived near the property and was the sawyer, and Trushaw resided some ten miles away; King, with an assistant, ran the mill until about December 11th, 1891, when he was taken ill and compelled to discontinue work.

It further appears by the testimony of Trushaw that he was at the mill on Tuesday, three or four days before the fire, and observed that there was considerable lumber piled up in and around the mill, and there were also logs there; the witness testified that on this occasion he sawed two logs, planed them and drew them home; he also swears that owing to King's continued illness he had promised him to come the next Monday and saw up some hundred or hundred and fifty logs which had been delivered at the mill, but that he was prevented from so doing by the fire.

Lucy King, the wife of King, was called as a witness by defendant, and testified that her husband was dead; she corroborated Trushaw as to his running the mill the Tuesday before the fire; she also swore that during her husband's illness, and up to the time of the fire, logs were drawn to the mill and lumber taken away. Fullerton, King's assistant, was called by plaintiff, and testified that when King was taken sick they had arranged to begin the next day to get out a bill of lumber from logs already delivered for the purpose; that after King was taken ill he (witness) cut wood for about a week.

It also appears that the mill was in good shape and in condition to run.

The learned counsel for the defendant contends that, notwithstanding this array of facts tending to show that the

owners of the mill had not ceased to operate it and the premises had not become vacant or unoccupied, there was a plain violation of the provisions of the policy already quoted, for the reason that on account of King's sickness the machinery in the mill was not run for more than ten consecutive days.

We are unable to agree with the defendant's contention that this clause of the policy is too clear for argument, and that any temporary cessation of the operation of the machinery in a manufacturing establishment by reason of sickness, break down, low water, or other unavoidable cause, although it is not the intent of the insured to cease operating, or to allow the premises to become vacant or unoccupied, is a clear violation of its provisions.

We think this clause of the policy should be reasonably construed so as to afford proper protection to both parties, rather than to give to it a meaning which must inevitably mislead the insured and do violence to the plain language of the instrument.

It does not seem possible that the owner of a manufacturing establishment entering into the covenants and agreements tendered to him by the standard insurance policy of this state, would suppose that if the necessary repairs of the machinery of his mill should take over ten days his insurance was forfeited unless the consent of the company was obtained. If it is the intention of the legislature or the insurance companies. to force such a hard and unreasonable contract upon the insured it should be under a provision to that effect worded in clear and unmistakable terms.

To give the policy the meaning insisted upon by the defendant is not only to disregard some of the previous decisions of this court construing provisions somewhat similar, but is to lose sight of the reason which has led insurance companies to protect themselves against risks on manufacturing establishments which have ceased to be operated and business or residential property which has become vacant or unoccupied, to wit, the increase of the moral hazard.

It is a fact well known to underwriters that the probability

of loss is greatly increased when property of any kind becomes unproductive; an idle mill and a vacant dwelling house are undesirable risks. It does not follow, however, that a mill is idle by reason of temporary delays incident to the business, nor that a dwelling house is vacant or unoccupied, the owner of which, leaving it fully furnished, has turned the key and left it for a short sojourn elsewhere. This court held that where the insurance was upon a saw mill run by water power, delays and interruptions incident to the business, such as low water, diminished custom or derangement of the machinery causing a temporary discontinuance of the active use of the mill, did not come within the terms of the policy avoiding it in case the premises became vacant and unoccupied. (*Whitney* v. *Black River Ins. Co.*, 72 N. Y. 117.)

. In still another case this court decided, in construing a similar provision, that a dwelling house furnished throughout, from which the owner had removed for a season, intending to return and resume possession, was not vacant within the meaning of the policy. (*Herrman* v. *The Merchants' Ins. Co.*, 81 N. Y. 184.)

In the case at bar the undisputed facts show that the business at plaintiffs' mill was conducted as usual during the illness of King with the exception of running the machinery; logs were received, lumber delivered and arrangements completed to supply King's place as sawyer.

There was no violation of the policy either in letter or spirit, and we think the General Term very properly ordered a new trial.

The order appealed from should be affirmed, with costs, and judgment absolute ordered for the plaintiff upon appellant's stipulation.

All concur.

Ordered accordingly.